Case number 21-5540 Daniel Williams v. Hilton Hall Jr. et al. Argument is not to exceed 15 minutes per side. Ms. Bixby for the appellant. Good morning, your honors, and may it please the court. Elizabeth Bixby on behalf of plaintiff appellant Daniel Williams. And before I begin, I'd like to preserve four minutes of my time for help from his unit counselor, but to no avail. She told him she didn't want to hear it, and at one point even ordered him to go back to his effing cell now. So Mr. Williams was raped by the prison gang. And his torment didn't stop with the rape. After the prison gang found out that Mr. Williams had reported the rape, they hit him in the head, held him at knife point, graphically threatened to kill him, extorted him for money on a weekly basis, stole his belongings, and threw tried over and over to get prison officials help to protect him. He wrote multiple letters to three defendants, Warden Hall, Case Manager Malone, and Unit Manager Jones, but those were ignored. And when he told another prison official, Sergeant Mann, about what was happening, she didn't just refuse to help him. Worse, she loudly labeled him as a snitch in front of other prisoners and was positively responsible for putting a printout of his sex offense conviction in the common area for all other prisoners to see. To make matters even worse, Mr. Williams's rape and subsequent torment gave him severe PTSD, causing him to suffer constant flashbacks, frequent shaking and crying, paranoia, and persistent insomnia. But when he asked his case manager for mental health treatment, he was refused. In dismissing Mr. Williams's complaint in part of 1997 EE grounds, the district court made three errors. First, it imposed a per claim causal requirement, but the result that Mr. Williams's rape, a sexual act under the statute, could not satisfy the statute's requirements. But this cramped interpretation has no basis in the statutory text and defines no support in case law. To the contrary, the two circuits to consider the question have rejected the district court's interpretation. Entailingly, neither the defendants nor the district court set any precedent in support of such a restrictive reading. Second, it held that being hit in the head was a de minimis injury, but modern medical science tells us that being hit in the head, even if it doesn't cause a concussion or symptoms, causes meaningful lasting damage to the brain. And especially given the liberal concern. So is it your position that any hit in the head, I mean, just by saying I was hit in the head, he's alleged an injury that's not de minimis? That that's sufficient? He didn't say anything like I have a concussion, I have any sort of resulting damage? So I don't think that any sort of physical contact to the head would qualify. Of course, if a plaintiff said, you know, someone like lightly tapped me in the head, I don't think that would meet the physical injury requirement. Because the ordinary meaning of physical injury at the time the PLRA was passed, was some kind of bodily harm or hurt. But I do think that, again, we know that medical matter and science, you know, tells us that even if a hit to the head does not cause a concussion, or even if the victim does not experience any kind of symptoms, it can still cause serious damage to the neural connections in the brain. And again, this is the earliest possible stage of the proceedings, he is a pro se plaintiff, at trial or at summary judgment, he could provide, you know, a medical expert who could attest to the damage to the brain that, you know, even a non concussive hit to the head does cause. And that's, but if I can move you off that topic, I, I like to ask about JB unit counselor. Is that is, is JB unit counselor, a single person? Is there only one JB unit counselor? Or is that, are there many people who fill that role? I'm just wondering why it wasn't sufficiently precise to the giving his her given name? I don't know the answer to that question, Your Honor. And perhaps my friend on the other side has that information. But I think whether there is only one JB unit counselor, but maybe there were several who work different shifts. You know, I think it probably was sufficient, given all the information, the complaint, again, her specific job titles, present the very specific timeframe in which these events happened, and the fact that she's a woman, you know, I think the marshals may have been able to serve the complaint on her with just that information. But even if that were not sufficient alone, you know, I think that under rule 15 C, he could still amend the complaint once he learns of her name through discovery, and have it relate back to his original complaints. But the district court, you know, the district court didn't allow any discovery, he allowed him to amend his complaint, and then the statute ran, but the district court sat on it for 11 months. So did you think about is, is 15 C your only avenue? Did you think about equitable tolling? Equitable tolling may be another avenue, in which, you know, if, if this court were to remand Mr. Williams's complaint, and he does amend it, and the defendants move to dismiss it based on the statute of limitations, I think equitable tolling is another argument that Mr. Williams could make in addition to his arguments under rule 15 C. But that would be an argument for the district court. I mean, an argument that could be made in the district court, it didn't need to be made here. That's correct, Your Honor. As Your Honor rightly notes, you know, at this stage, no, no service has been has been accomplished, or even attempted, because under the fail array, prisoners are not allowed to proceed with service until their complaint has undergone this screening, which, as Your Honor points out, can often take nearly the entire statute of limitations to undergo, or sometimes even pass the statute of limitations, given the busy workload of the district court. And so, oh, I'm sorry. Go ahead. To return to the district court's analysis under 937EE, it also made a third mistake, which is that the statute does not serve as a basis for complete dismissal of a complaint. It only affects eligibility for compensatory damages for mental or emotional injury. So even if Mr. Williams did not satisfy the statute's requirements, dismissal was still improper because it had other forms of relief available to him, including injunctive relief, nominal and punitive damages, and compensatory damages for his physical and tangible harms, you know, the rape, the hit to the head, and the weekly $50 extortion from the prison gang. The district court also made multiple errors as to the merits of Mr. Williams' claim. As for his pre-rape failure protect claim against the GB unit counselor, the district court simply didn't analyze that claim because it thought that he hadn't sufficiently identified the GB unit counselor as a defendant. But the complaint clearly alleges that Mr. Williams, prior to his rape, told the unit counselor, the prison gang is threatening me, I'm at risk, can you help me? And it was refused. And the unit counselor need not have known the specific member of the prison gang that raped Mr. Williams or the form of harm would come as a rape, as opposed to, you know, a stabbing or beating or some other form of serious harm. And we know that from former versus Brennan. But what do we know about, so if we put aside JB unit counselor, what do we know about what Mr. Williams told the other named defendants? So in order to make out a failure to protect claim, right, they have to have formed a subjective belief. He says he sent some letters. We don't know when, that point seems critical. We don't know the content of the letters. So how do we infer that they knew anything? So we don't have, you know, precise dates for the letters or the copies of the letters. Of course, they are no longer in Mr. Williams' possession. They are in the possession of the defendants. I don't think that, you know, the only defendant for the pre-rape failure to protect claim is the JB unit counselor. But as for his post-rape failure to protect claim, we know that Mr. Williams specifically alleged that he told the defendants in these letters that he was being held at knife point and that he had been, you know, threatened with death repeatedly. And so I think at this very early stage, given that Mr. Williams is a post-rape plaintiff and we're at screening, that was enough to plausibly allege a subjective wrong of, you know, the failure to protect claim. Now, it may be that as defendants offer here, that at a later stage, defendants come forward and say, we did not receive these letters or we received them, but we didn't read them. And then we'd be in a very different situation. But at this point, it's at least a plausible inference that the defendants did read these letters and simply chose to ignore them. And that under this court's decision in Nelson versus Kloverberg would be at least a plausible claim of deliberate indifference. But wasn't he put on red restricted status at some point? And doesn't red restricted mean that he's not allowed out of his cell with other people? So once he's put on red restricted, why would any of the named defendants think that he had any threat of harm? The complaint makes clear that he was put on a restricted status after he reported the rape. You know, he was put in this protective custody for a period. And then while he was in protective custody, the prison gang learned that he had reported the rape, you know, had snitched on the member of their gang. And then he says that once he was released back to general population, then the prison gang, you know, continued to, you know, torment him in the form of, again, holding him at knife point, threatening to kill him, stealing from him. Counsel? Sorry, I don't have video today. But this is Judge Sipar. Is it right that he went back to general population? Maybe I missed that in the complaint. Where is that? Because I thought he went from, and correct me if I'm wrong, from general to restricted or to protective to red prison? I think that the complaint at R13 and R14 discusses, you know, his return out of protective custody. I don't know the exact term, but he was in protective custody, you know, safekeeping for, you know, starting two days after his rape, through some time period. And then when he was, you know, then sent back to some sort of less restrictive custody is when the other, you know, sort of harms started. Oh, I'm sorry, Judge White. Go ahead. No, you go ahead. He says, now that I'm on red restricted, after he describes the knife to the throat and things like that, and then I don't see where he says he went back into the general. He then says, I wrote a letter to the warden three times. He and she actually responded not in a positive manner, et cetera. So he does allege that when he was even on this red restricted status, that, you know, one of the problems was that the guards were allowing his door to be opened and that the, you know, members of the prison gang were then coming in to do him this harm, stealing from him, holding him at knife point, threatening him, you know, extorting him to this $50 weekly fee. So even if you weren't, even if you were never returned to general population, only run this red restricted status, he does allege on page. I'm sorry, your honor. No, I'm sorry. I'm sorry to interrupt you, but that's not what it is. It says I've had a knife put to my throat. I been hit in my head. I get my commissory taken. And now that I went on red restricted to come out by myself, the inmates, that's when they threw stuff under his door, is what he says. Well, and then later on, on page 14 of the complaint, that same page, he says, you know, that the guards opened his door and that they come in his cell, they take his stuff. They say that they're going to kill him and that they're going to, you know, send him out leaking to the morgue. So that all seems to be occurring. You know, and how, how is the warden or anyone going to know that these are unnamed guards that are doing this apparently? And how is anyone going to know it? Like who knew and didn't pay attention to it? So I think Mr. Williams, again, in his complaint, he alleged that he told, you know, in these letters that he told the warden, the case manager and the unit manager that he was being held at knife point and threatened with death. You know, it's at least plausible inference that he explained that the reason that this was being allowed to happen to him was because the guards were, you know, allowing his cell door to be left open when they shouldn't have been. And I see that my, my time has expired. Any other questions? No, but Judge White, I'm sorry. I think I interrupted you. No, I was just trying to get the timeline. So the, the leaving the door open and the threats and coming into his cell, was that when he was on that red restricted or was that after? So the leaving the door open seems to be when he was on red restricted. On page 13, he describes that he came, quote, came back here. I think a fair reading of that, given his prostate status is that once, after he left protective custody, he went back to the JB unit, sort of general population. And then on page 14, he describes that he then went on red restricted status. It seems that the hit to the head and that being held at knife point may have happened when he was back in the JB unit before he was put in red restricted status. And then once he was in red restricted status, that's when the guards were leaving his door open, or popping open his cell and allowing the members of the prison gang to throw urine under his door. And, you know, we're continuing to threaten him with death and stealing his belongings. Thank you. Thank you. Counsel. Yes, may it please the court. Nathan Tilley here today on behalf of Appellee Warden Hall. Your Honors, we are here today pursuant to this court's directive that we brief and argue these issues raised in light of appellants appeal. Of course, we were unaware of this lawsuit until we received an order from this court. Nonetheless, though, we based upon our review of the district court's order. We think that it that its order should be affirmed by this court. And I think that it is it remains apparent from appellants argument today and from their brief that they're attempting to use this case as a as a vehicle to resolve issues surrounding 42 USC 1997 E. We don't think it's necessary for the court really to delve into all the issues that remain concerning that statute. There are much more fundamental and fundamental hurdles the clear in order to state a claim against the defendants. I think the court has has kind of briefly addressed many of those issues in question about Malone, because it seems to me you often use titles and names. Why wouldn't case manager Malone be enough like Warden Hilton Hall? Um, it seems to me their job title alone, coupled with the last name, the very least would be enough for the district court to screen it and go ahead. Yes, your honor. I think he did identify case manager Malone as a defendant in the complaint. The point, however, that the district court made, and I think the point is is well taken when he alleged that he asked for mental health care. He did not identify him as case manager Malone. He identified a case manager. Well, obviously, a prison will have multiple case managers at any given time and an allegation in the complaint that he requested mental health care from from case manager, not from case manager Malone, just just the words case manager is insufficient to determine who plaintiff asked actually requested that mental health care from. I think this also raises the point, and I think this is important for the court to recognize and recall that the district court did not. It dismissed the complaint. It dismissed the case after it gave plaintiff, who is pro se, the opportunity to amend. And and I think that's important for this court to consider because in the district court's initial PLRA screening order, it identified the issues where plaintiff had failed to state a claim. It specifically noted in the order when it addressed the case manager that the plaintiff failed to identify who he was talking about. But and it says he says in the title case manager Malone, and then the only time he refers, he says that he asked the guards in case manager to call mental health. So why wouldn't I mean, it just be short. We do that in opinions all the time. We call them their full title and then we give them something short. Why isn't that a fair inference? Well, again, your honor, I think I would just reiterate that that it would just be like saying I asked an officer to do something. Well, obviously, a jail has multiple officers and saying I asked case manager. There are multiple case managers in a prison. And so I don't think that it's specific enough. But but farther than that, further than that, even if you were to say even if the court were to conclude, well, we think it's sufficient under Iqbal Twombly pleading standards, him him identifying case manager in that portion of the remains. And what is lacking is an allegation or any factual allegations within the complaint that case manager Malone had subjective knowledge that that the plaintiff needed mental health care. There's nothing in the complaint that alleges he knew or was aware that it was needed. A simple request for health care or care is all that is alleged. And I think that more is required to state a claim. You have to have the subjective element present within the complaint to show or to allege an eighth amendment violation. It's absent here. And again, the district court gave him the opportunity after it screened the complaint and gave a thorough analysis of where the failings were to amend and to to remedy the issues. But for whatever reason, plaintiff chose not to do that and he chose not to do it and then appealed to this court based upon his original complaint. And I think that that is important because the district court understood this was a pro se plaintiff. It is a pro se pleading. He gave him a little grace and he and he gave him instructions on how to actually plead the claims. But he chose not to do that. I don't think that because he's pro se that the court should lower pleading standards or allow claims to go forward when specific facts are not alleged to show that these individual defendants had subjective knowledge. And I think that's one of the key failings of the complaint as a whole. The plaintiff appealed the district court's ruling as it relates to the individual defendants. And I think I think it was Judge Larson who asked, well, what did they know? Well, what the complaint tells us they knew is very limited. Plaintiff alleged that he wrote them all letters asking to be moved. That's all that he alleged was in those letters. A request to be moved. A request to be moved. Yes. Yes. You can say at one point that he told the warden that he had been threatened with a knife. He did say that, Your Honor. Yes, he did. Yeah, you did. He did say that. And man must have known that he had been threatened by a knife because she told Williams to quit telling them about inmates who came in my cell with a knife. He did allege that as well, Your Honor. So why isn't that enough for the post-trait claims? Well, what that would be is is an allegation that he told them about a past incident, a prior incident where he had been threatened. What that is not is an allegation that he told them that he was in imminent danger after that occurred. There was nothing alleged where he told any of the individual defendants. Currently, I am in a status that my physical well-being is in danger. That is absent from the complaint. And I think another important point is he said, I've been threatened with a knife and please move me. Well, doesn't that imply like I'm I don't think I think you're a future harm. I don't think fear of future harm is the question. There has to be more than a subjective fear. There has to be objective facts presented to prison officials that you are still in danger. And his subjective fear is not sufficient based upon past incidents. He must provide some kind of specific facts to the prison officials to show that he is in imminent danger at that point in his complaint acknowledges he really wasn't in danger, even though he was in fear of fear of danger. He wasn't because he was on red restricted. And yes, he alleges that while on red restricted, he heard verbal threats from other inmates that they were going to kill him or hurt him. But verbal threats do not not mean he's actually in danger, because he is on red restricted, something the prison officials, the defendants would have known. And in light of that knowledge, no matter what other inmates are going to say, does not objectively place him in danger. And I think that this case really presents a dangerous slippery slope for this court if we allow these kind of claims to go forward. And the reason I say that is we the court has repeatedly and all acknowledged that prisons are dangerous places, because they're filled with dangerous people. They're filled with murderers, and rapists, and thieves. That's who are housed in prisons. Naturally, if you're housed in that environment, there are going to be people there that live there who have subjective fear for their well being. But subjective fear for your well being is not enough to obtain relief from the court. It's not enough to show an Eighth Amendment violation. You have to show objective facts that you are presently in danger and prison officials are not doing anything to provide you protection. What about me? Can I ask about JB unit counselor? So is there only one JB unit counselor or one female JB unit counselor? Are there many? Like why is it insufficient for him to have named JB unit counselor told us her gender can identify that person? Well, Your Honor, I think that I think the answer to that is no, you cannot. I think that, that obviously, again, a prison has multiple officials and multiple counselors. Those counselors can change on any given day. Those counselors can change on any given ship. And more than one at a time. If one knew the exact time and day, would there have been more than one person performing that or filling that role at that particular time? I don't necessarily know the answer to that, Your Honor. I don't think the answer matters, though. Because and the reason I say that is, I think that the Sixth Circuit case law is very clear and very consistent than an unnamed defendant is insufficient to obtain service of process. An unnamed defendant is insufficient to hold statute of limitations. I think that the distinction between naming someone JB counselor in Jane or John Doe is really a distinction without a difference. And the reason that I say that is because when you name someone John Doe in a complaint, and I'm sure this court has seen many complaints with John Doe's name within the body of the complaint, plaintiffs will often describe who John Doe is. I think that just because you identify them John Doe, they'll identify them as a male officer who's working at such and such night. Nonetheless, this court has repeatedly held that's insufficient. You must be able to identify them by name. And without an identification by name, it is you cannot obtain service on that individual. Well, but is there some obligation on the district court to I mean, this is a pro se, prisoner, to allow some minimal discovery to figure out who was the female JB unit counselor who was working at this time on this day? Your Honor, I think the obligation is actually on the plaintiff to do that. The plaintiff has the obligation to do that without the court's permission. Oh, I'm sorry, Your Honor. I don't understand. How does the plaintiff do discovery? Or how does the yeah, discovery without the court's permission? Well, sure. I think that the plaintiff would move for it. The plaintiff certainly could file a motion with the district court asking for discovery. I think that that is routine that plaintiffs do that. In these kinds of situations, when they need to identify a defendant, they would move for discovery and the district court would then consider that motion and potentially allow that discovery to occur. The plaintiff did not do that here. And I think that that that is true regardless of whether they're pro se or or represented by counsel. Their obligation remains on the plaintiff to actively attempt to identify who the defendants are. plaintiff failed to do that here. And really, there's not been a reason why he could not have done that. Your Honors, I think that the other key part to this case is really, we cited Wilson v. Yacklidge in our in our brief. And I think that that that's an important case. Because what this case really comes down to as we as it relates to these named individual defendants, is whether he stated a claim based upon prospective fear of harm, not based upon an actual injury that he suffered, but based upon fear of harm in the future. And pursuant to this court's precedent in Wilson, that can can't even if you stated a claim, even if you could state a claim in that situation, which I don't think plaintiff did here, because as we said earlier, he failed to allege objective facts to show that he was actually in danger. But even if he had done that, the only relief available to him would be injunctive relief. And when he appealed this case to this court, Mr. Mr. Williams was no longer even housed at HCCF. He has he is moved, he is no longer there. And therefore any request to be moved from HCCF is is moot. In their reply, appellants appellant argued that, well, maybe he can get injunctive relief to be forever barred from returning to HCCF. I think that that would be a very broad and overreaching injunctive relief that the court would never consider. Number one, number two, it would, it really wouldn't make sense because obviously, the inmates who are housed at HCCF, he alleged were threatening him may not may no longer be housed there either. They can be moved at any given time. So a blanket um injunctive injunction preventing him from ever being housed at HCCF would not make sense. But but but lastly, and really, most importantly, the wrong parties are involved. The wrong parties were named because he's a Tennessee Department of Correction inmate. And it would be the Tennessee Department of Correction who makes decisions concerning where inmates their inmates are housed, not the defendants in this case. And therefore any injunctive relief against them would be improper. I see I'm out of time. Do the judges have any other further questions? Just the part you have any questions? No, thank you. Thank you. Thank you. Thank you, Your Honor. Prisons may be dangerous places, but Farmer tells us that prison officials have an obligation to respond reasonably to serious risks of which they are aware, which is exactly what Mr. Williams alleged. Defendants asked this court to hold that it's not even plausible at this very early stage by a pro se plaintiff that defense that prison was not enough to create a substantial risk of serious harm. And defendants say that Mr. Williams did not face any actual harm, only a fear of future harm. That's simply not true. He was hit in the head held at knife point extorted for hundreds of dollars. He had urine thrown at him and he was again repeatedly threatened with death. And as a Supreme Court said in Rhodes, you're simply not part of a penalty that criminal offenders pay for their offenses in society. They are serious harms. And as the complaint alleges, even once he was returned to red restricted status, these harms were still occurring. And it is at least a plausible inference at this very early stage that Mr. Williams explained this to defendants in the multiple letters that they sent him. And regarding amendments to the complaint, there are multiple legal issues where it would have been asking us to provide content to the he says, I wrote, I asked to be moved, but he doesn't ever say, I told them about all these things that had happened to me and were happening to me. So it's a line, it's a line. You know, how much do we read into what must have been in those letters? Yes. So as your honor rightly identified with my friend on the other side, he did in fact, alleged that he told the warden that inmates were putting knife to my throat, but they were threatening to kill him. So it's more than just, I requested to be moved. And that was it. That is what defendants say about the complaint, but it is simply belied by the plain allocations of the complaint. And again, at this point, the only possible inferences that can be drawn are those in favor of Mr. Williams. But assuming that's true, which I think you could argue is a fair inference. Why didn't the warden do enough when he moved him to protective custody and then read restricted? It's not like he ignored the allegations, the plaintiff's moving as a result of those letters. So I think the complaint is clear that the letters occurred after he was in protective custody, but, you know. Red restricted. Protective. So it was the mental health staff that moved him to protective custody after he was reported his rape. Then at some point he was moved back to the unit. And then it seemed at some point thereafter moved to red restricted status. But again, he alleges that even after he was put on red restricted status, you know, all of these current crimes were continuing to happen to him because guards were allowing prisoners to enter his cell. And it's at least plausible at this point that the letters, you know, gave that additional information to the defendants. And we know that Sergeant McMahon, at least, you know. That's Larson's question. A lot of things could be plausibly in the letter, but we have to have evidence that we can then infer from that it was. And the only thing we have is the one statement you refer to that I think is on page five or six of the complaint. Yes. So at pages five and six in the complaint, he makes multiple specific allegations that he told these defendants that, you know, inmates were putting a knife to his throat and that he was they were threatening to kill him. And I think that is enough to plausibly infer at this very, very early stage. These are all issues that the defendants can raise at even at the motion to dismiss. This is just screening, a pro se plaintiff at screening. These are things that could be addressed at motion to dismiss stage, at summary judgment and beyond. And as to Sergeant Mann, we know that Sergeant Mann certainly knew that, you know, prisoners were threatening to kill him and that he had been held at knifepoint. And she took, you know, further. She didn't just ignore or minimize or think it wasn't a big deal. She she took further steps to actually increase the risk of harm to Mr. Williams. And even the district court found that Mr. Williams had stated a plausible eighth amendment claim against Sergeant Mann and only dismissed it on the basis that 187EE was not satisfied. So I know we're out of time. May I ask one more question? Judge White? Sure. Yeah. So you say we're just at screening, which is right. And that they could raise these claims on a motion to dismiss. But then if you read our case law, it says, well, at the screening stage, the judge is supposed to apply the motion to dismiss standards. So how would you articulate what difference there is between the two stages? Like how are we supposed to apply the motion to dismiss standards differently at the screening stage, which you must think that we do because you think they could raise these same arguments later and maybe they would prevail at motion to dismiss. So explain to me what you think the difference is in how we apply the same standard differently at these two different stages. I think it is much more likely that the defendant would be able to successfully raise these issues on summary judgment where they could introduce evidence beyond the plain language of the complaint. Your Honor is correct that the standard is the same at screening, but with the added sort of twist that Mr. Williams, again, was pro se at the time he filed the complaint and had no opportunity to respond to the district court at the screening stage, whereas he would at the motion to dismiss stage. You may have mentioned this before, but why did he not follow and file an amended complaint? So the record doesn't have that information, but amendment would have been futile on multiple legal issues. So, for example, the district court's erroneous interpretation of 1997-EE could not have been cured through amendment. In addition, the district court's erroneous legal interpretation regarding the naming of the JV unit counselor is something that could not have been cured through amendment. So we found several dispositive issues and then would have been futile. Could you have asked for some kind of discovery? So when the district court says JV unit counselor, that's not good enough, can't be served, your opponent seems to think at that wrong? That is, it is wrong, your honor. He could not seek discovery prior to screening because no defendant had been served and therefore no defendant had appeared. So he simply, the district court would have been powerless to serve discovery on defendants, on a defendant who had never appeared in the court. So defendant's contention that he could have just asked for discovery prior to screening is just wrong. And I see my time has expired, so thank you, and we ask this court to reverse the district court. Okay, no more questions, right? No, thank you. Okay, thank you very much. The case will be submitted.